FILED

NOV 2 7 2007

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**M.P. b/n/f Richard & Kathryn P.,** )
)
**Plaintiffs,** )
)
**VS.** )
) **Civil Action No. SA-07-CA-004-XR**
**NORTH EAST INDEPENDENT** )
**SCHOOL DISTRICT,** )
)
**Defendant.** )
)

**ORDER**

On this date, the Court considered Defendant's motion for summary judgment (docket no. 14). After careful consideration, Defendants' motion for summary judgment is GRANTED.

Plaintiffs bring this suit alleging that NEISD violated the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1415, et seq. Prior to bringing this suit Plaintiffs brought their claim before the Texas Education Agency (TEA) and an evidentiary hearing was held in conjunction with that proceeding. The Hearing Officer decided that NEISD correctly determined that M.P. was not a "child with a disability" eligible to receive IDEA services. Plaintiffs bring this suit appealing that order.

An aggrieved party has the right to appeal an IDEA hearing officer's decision to a district court of the United States. 20 U.S.C. § 1415(i)(2)(A). When a court reviews a hearing officer's decision under the IDEA, the Act requires the court to receive the records of the administrative proceedings and hear additional evidence at the request of the party. 20 U.S.C. § 1415(i)(2)(c); *see Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 (5th Cir. 1997), cert. denied,

522 U.S. 1047 (1998).

**Decision of the Special Education Hearing Officer**

On November 1, 2006, the Special Education Hearing Officer made the following findings:

1. M.P. received speech therapy in kindergarten and was diagnosed with ADHD in elementary school. He then received special education services under the OHI category.

2. On or about February 1, 2005 (when M.P. was in 7th grade), an ARD Committee met and the Committee and M.P.'s father unanimously agreed that M.P. was not manifesting ADHD symptoms and that he no longer required special education services.[1]

3. After the ARD meeting, M.P. was suspended for dress code violations which resulted in numerous absences.

4. In May 2005, Dr. Charles Tatum and Dr. Mary Garcia - Holguin found that M.P. manifested ADHD characteristics. An OHI form that Dr. Garcia-Holguin completed indicating an ADHD diagnosis, however, was not submitted to NEISD at that time.

5. M.P. ended the 7th grade with several failing grades and failed the TAKS math test.

6. In August 2005, Thomas Gaines, PhD performed an Independent Educational Evaluation (IEE). He found that M.P. evidenced mild oppositional defiant disorder, mild impulse control disorder and mixed receptive/expressive language disorder. Dr. Gaines deferred any finding of ADHD to a qualified physician.

7. On September 23, 2005, another ARD meeting was held to discuss Dr. Gaines' evaluation. The ARD committee did not recommend placement in special education. M.P.'s father disagreed.

---

[1]That decision was reached because although there were issues regarding behavior, M.P. had passed all areas of the TAKS test since third grade and M.P. had not been manifesting ADHD symptoms.

8. During the 2005-2006 school year, M.P. was enrolled in the 8th grade.

9. During 2005-2006, M.P. had approximately 7 disciplinary referrals while enrolled at his regular middle school.

10. In March 2006, M.P. stuck numerous classmates with a needle during P.E. and lunch. As a result of this incident, he was assigned to Alternative Middle School (AMS). While in this school, M.P. had numerous disciplinary referrals, including one for threatening a teacher.

11. On May 15, 2006, the AMS principal recommended that M.P. be expelled from NEISD for the remainder of the school year and the first semester of the 2006-2007 school year.[2]

12. M.P. passed all his 2005-2006 classes, passed the reading, science and social studies TAKS tests, but failed Math TAKS.

13. Following an expulsion hearing, M.P. was expelled on June 22, 2006 and referred to the Bexar County Juvenile Justice Alternative Education Program (JJAEP). M.P. appealed and the decision was later modified to 30 days at JJAEP and 30 days at the NEISD Alternative High School.

14. Also in June 2006 a Full and Individual Evaluation (FIE) was conducted by Wendy Hendrichson Smart, L.S.S.P. Ms. Smart essentially agreed with Dr. Gaines and found that M.P. did not manifest a learning disability, and that there was not substantial evidence that M.P.'s classroom behavior was attributable to ADHD.

15. In September 2006, a second OHI form completed by Dr. Garcia-Holguin indicating an ADHD diagnosis was presented to an ARD committee.

Evaluating the above, the Hearing Officer concluded that M.P. was a student who has ADHD

---

[2]M.P. attended AMS 17 school days and had 11 absences. He was referred to the office 8 times with 18 "redirections."

and has a qualifying disability under 34 C.F.R. § 300.8(a) and (c)(9)(i). But the Hearing Officer went on to state: "However, that alone does not garner special education services. To be entitled to special education services, as well as the requested compensatory services, Petitioner has to prove that he has, and had, an educational need for such services that was caused by the ADHD. The evidence fails to support this finding." In making this conclusion, the Hearing Officer noted that M.P. completed the 2005-2006 school year without the need for special education intervention, by his own admission M.P. chooses his own behaviors, and teachers testified that he did not need special education intervention. Accordingly, the Hearing Officer concluded that M.P. did not manifest an educational need for special education intervention.

**General Standard of Review in IDEA Cases**

When a district court reviews a hearing officer's decision under the IDEA, the court's review is "virtually de novo." *Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir.2003) *(quoting Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir.1993)). Although "due weight" is to be given to the hearing officer's findings, they are not conclusive and the court "must ultimately reach an independent decision based on a preponderance of the evidence." *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 347 (5th Cir. 2000), *cert. denied*, 531 U.S. 817 (2000) *(quoting Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997 ), *cert. denied*, 522 U.S. 1047 (1998)); *see also Teague*, 999 F.2d at 131. The district court should not defer to the hearing officer's findings when its own review of the evidence indicates that the hearing officer erroneously assessed the facts or erroneously applied the law to the facts. *Teague*, 999 F.2d at 131. In this respect, the procedure is more akin to an appeal from an administrative determination rather than a standard summary judgment analysis. The burden of proof is on the party challenging the IEP,

in this case, the Plaintiff. *See Bobby R.*, 200 F.3d at 347. Finally, "[t]he Court's task is not to second-guess state and local policy decisions ." *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1048 (5th Cir. 1989). Rather, it is determine whether state and local school officials have complied with the Act. *Id.*

**Analysis**

In order to be eligible for the benefits provided by the IDEA, a child must (1) have a qualifying disability and (2) by reason thereof, need special education and related services. 20 U.S.C. § 1401(3)(A). A child must meet both requirements before he is eligible to receive special education and services.

In order to determine whether a student is a "child with a disability" under 20 U.S.C. § 1401(3)(A) and eligible for special education services, a local educational agency must conduct a full and individual evaluation ("FIE"). 20 U.S.C. § 1414(a). In conducting the FIE, the agency shall:

(A) use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information, including information provided by the parent, that may assist in determining-

(i) whether the child is a child with a disability; and

(ii) the content of the child's individualized education program, including information related to enabling the child to be involved in and progress in the general education curriculum, or, for preschool children, to participate in appropriate activities;

(B) not use any single measure or assessment as the sole criterion for determining whether a child is a child with a disability or determining an appropriate educational program for the child; and

(C) use technically sound instruments that may assess the relative contribution of cognitive

and behavioral factors, in addition to physical or developmental factors.

20 U.S.C. § 1414(b)(2). Upon completion of the FIE:

(A) the determination of whether the child is a child with a disability as defined in section 1401(3) of this title and the educational needs of the child shall be made by a team of qualified professionals and the parent of the child in accordance with paragraph (5); and

(B) a copy of the evaluation report and the documentation of determination shall be given to the parent.

20 U.S.C. § 1414(b)(4). In Texas, this determination is made through the Admission, Review, and Dismissal Process ("ARD"). See 30 C.F.R. § 300.343. Once a determination has been made through the ARD process, an aggrieved student or a representative acting on his behalf can request a due process hearing ("DPH") before the Texas Education Agency. 34 C.F.R. §§ 300.504-300.515. Any party aggrieved by the outcome of a DPH may file a civil action in federal court.

As noted above, in order for a child to be a "child with a disability" the child must (1) have a qualifying disability and (2) by reason thereof, need special education and related services. See 20 U.S.C. § 1401(3)(A). There is no dispute that M.P.'s ADHD is a qualifying disability. Among the disabilities listed in § 1401(3)(A) is "other health impairment." ADHD qualifies as an "other health impairment." See 34 C.F.R. § 300.7(c)(9). However, there is adamant disagreement as to the second prong of the definition. Specifically, NEISD maintains that M.P. does not "need special education and related services" because of his ADHD. M.P.'s parents disagree.

The FIE noted that "many of [M.P.'s] behaviors and test indicators strongly suggest social maladjustments.... These types of behaviors are not sufficient for meeting qualification criteria for special education services, unless there also exists a diagnosis of a serious emotional disturbance."

The FIE also noted that M.P. "does not have a Learning Disability.... There also does not appear to be substantial evidence that [his] classroom behavior (distractibility and reported hyperactivity) is due to a diagnosis of Attention-Deficit/Hyperactivity Disorder." The FIE concluded with recommendations to be provided to M.P. within a general educational setting. A psychological evaluation dated August 10, 2005 by Thomas Gaines, Jr., PhD also concluded that M.P. was not qualified for special education services.

During the Due Process Hearing held on September 13, 2006, testimony from various faculty members indicated that M.P. could focus on his assignments, could behave well, and could make good choices. One of M.P.'s teachers testified that when M.P. misbehaved in class it was not an impulsive act, but rather a voluntary act. Another teacher testified that M.P. could control his behavior when he wanted to do so. Another teacher testified that she did not see any "significant or pervasive problems with hyperactivity or maintaining attention and focus."[3] Dr. Gaines again testified that M.P. did not have a learning disability. In one test M.P. tested in the average range for intelligence. It was noted that M.P. has not taken any medications for ADHD for several years. M.P. indicated to various experts during testing that he was able to control his behavior.

During the Due Process Hearing evidence was also tendered that M.P. was in the 99th percentile of people who are hyperactive. M.P. also "demonstrated a significant weakness with regard to social judgment and knowledge of conventional standards of social behavior." There was significant disagreement whether M.P. suffered from "oppositional defiant disorder," ADHD or both.

In addition, during the hearing, various experts testified that "there are differences in children

---

[3]Plaintiffs challenge the competency of these teachers to diagnose ADHD. That challenge, however, is misplaced. The hearing officer and this Court received their testimony on the issue of whether by reason of his ADHD, M.P. needs special education services.

who have ADHD.... Even within types, there are some children who are going to be very bright and ADHD and get by...." One expert noted that some students with ADHD can sustain focus for long periods of time. Regrettably, little substantive discussion was offered regarding what type of ADHD M.P. suffers from and how it has allegedly impeded his academic performance. One expert basically asserts that since M.P. failed sixth and seventh grades and failed a TAKS math test there must exist an educational need. The expert equivocates on whether the extra educational support (an assistant to help M.P. structure his environment and a behavior management plan) can be supplied in the general education setting.[4] One of M.P.'s teachers and an expert testified that the proposed educational support could be given in a regular classroom on a regular basis. However, as conceded by M.P.'s expert not all students who fail a TAKS test qualify for special education. Plaintiffs' counsel merely states in a conclusory fashion that "it is more likely that the underlying cause of the inappropriate behaviors [and poor grades] was the ADHD."

Much of M.P.'s briefing here in this Court is devoted to the fact that M.P. has ADHD. As stated above, the Hearing Officer found that M.P. was a student who has ADHD and has a qualifying disability under 34 C.F.R. § 300.8(a) and (c)(9)(i).

M.P. "must still fulfill the second prong by demonstrating that, by reason of his ADHD, he needs special education services. Therefore, the fact that [M.P.'s] ADHD adversely affects his educational performance does not necessarily mean that he is eligible for special education services under the IDEA." *Alvin Independent School Dist. v. A.D. ex rel. Patricia F.*, 503 F.3d 378, 383 (5th Cir. 2007).

---

[4]The Court notes that M.P's father acknowledged that teacher assistance provided to M.P. in a general education setting during a study hall and assistance from M.P.'s girlfriend helped curb M.P.'s disruptive behavior.

Applying the applicable standard of review in an IDEA case, Plaintiffs fail to establish that by reason of his ADHD, M.P. needs special education and related services. Considering "a variety of sources, including aptitude and achievement tests, parent input, and teacher recommendations, as well as information about the child," the Court finds that M.P. has no need for special education by reason of his disability. The Court finds persuasive the testimony of M.P.'s teachers, who observed his educational progress first-hand, and finds them more reliable and informative than much of the testimony from M.P.'s experts, who based their general opinions on limited information culled from isolated visits.

"The Court deeply sympathizes with the angst and frustration of [M.P.'s parents]. Raising a child with attitudinal and/or behavioral problems is unquestionably a tremendous burden, and the Court commends [them] for [their] compassionate practical involvement and [their] vigorous, tenacious, and vociferous advocacy on behalf of [their] child. However, the Court must balance its admiration with its equal concern for the burdens of school taxpayers and the practical limitations of school districts to provide a common educational experience tailored to the maximal individual needs of countless children. As regrettable as this reality is, the State is simply not obligated to design and implement a perfect education for every child. No child receives all the educational services that might be desired. This is the reality of the State's limited budget and, as commonly diagnosed as ADHD is, allowing special education for every child so afflicted would instantly exhaust the resources of any school district." *Alvin Independent School Dist. v. A.D.*, 2006 WL 2880513 (S.D. Tex. 2006).

**Conclusion**

For the above-stated reasons, Defendant's Motion for Summary Judgment is hereby GRANTED. The decision of the hearing officer that Plaintiff is not entitled to special education

services is AFFIRMED. The remaining motions (docket nos. 13 and 15) are DISMISSED as moot. Each Party is to bear their own taxable costs, expenses, and attorney's fees incurred herein to date. A Final Judgment will be issued by the Clerk contemporaneously with this Order.

SIGNED this 27th day of November, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE